Opinion of Justice Ford.
The defendant made a note of two hundred, and fifty dollars, to Paul H. M. Provost, or bearer, payable at the *160 State Bank at Trenton, without defalcation or discount; which note, with the endorsement of Provost thereon, he presented to the said bank for discount, and for it received the money. Before the note so discounted became payable, the bank endorsed it over to Tillou, the plaintiff, who, at its maturity, brought upon it the present action, against Brit-ton, the maker. The defendant pleaded the general issue ; and secondly, that he paid the note to the bank, of which payment the plaintiff had notice before he took the endorsement. To these pleas the defendant subjoined five notices of special -matters, which he intended to offer in evidence at the trial. The statute provides that a defendant (except in cases of mutual dealing) may plead the general issue, and give in evidence any special matter which, if pleaded, would be sufficient to bar the action ; giving notice with such plea, of the special matter so intended to be *127] *offered in evidence. Rev. Laws 403, sec. 2. Another statute provides, that when persons stand indebted to each other on mutual dealings, and one brings an action against the other, the defendant may plead payment, and give notice with such plea, of any bond, bill, receipt, bargain or contract, that he intends to set off at the trial. Rev. Laws 307, sec. 11. The plaintiff now moves the court to strike out the plea of payment to the bank, and each of those notices, upon objections which he adduces against them severally, and which oblige us to consider them in their order.
The first notice is — -That at the time the note 'in question was discounted, the bank paid the defendant the amount thereof in its own bills; that afterward, before the note became payable, and while the bank was still the holder thereof, the defendant tendered the same identical bills to the bank in payment of. the note, but it would not receive them; of all which the plaintiff had notice before he took the endorsement; and the defendant still holds the same bank bills, unpaid and unsatisfied.
*161 Now, if we throw these facts into the form, of a special plea, it will he denominated a plea of tender; but clearly defective in substance. To make a tender valid, the debt must be due at the time of the tender; the money tendered must be specie; and the money must be brought into court along with the plea. Therefore, as the matters contained in the notice are not a sufficient bar, this notice cannot stand alone. It must be observed, however, that the defendant’s counsel presented it, not alono, but in connection with the second notice, which comes next under consideration.
The second notice is — That while tho bank was the holder of the note, t'lie said bank became indebted to the defendant in the sum of four hundred dollars; whereupon tho defendant offered to set off so much of his demand against the bank, as would satisfy the said note; by reason whereof, there was not then, nor afterwards would be, any thing due from the defendant on said note, to the bank; also that the hank was then in failing circumstances; of all which tho plaintiff had notice before he took tho said endorsement; and that the transfer thereof to him was fraudulent and void.
It would have been difficult to determine, whether this is a notice of set off under the plea of payment, or a notice of fraud, under the general issue, if the defendant’s counsel had not solved *the difficulty by representing it to [*128 be both. Accordingly, one of them has pressed it upon' the court as an equitable set off, while the other has considered it in quite the opposite light, of a bar, by reason of fraud and covin. In order to constitute a set off, this notice is taken by itself; but in order to constitute a fraud, the defendant connects this notice with the former one. After-wards he took the third by itself; then presented the fourth and third in connection; and lastly lie combined together the fifth, the second and the first. As the principles which ought to regulate and govern notices in general, underwent considerable discussion in the course of the argument, it is proper to notice them in this place.
*162 The statute having avowed, that the substitution of a notice in lieu of a special plea, was intended to facilitate pleading, by doing away those forms and technicalities which were supposed to have little or no connection with the merits of a defence, we may assume it as a general rule, that notices are not to be set aside for errors or omissions in matter of form. But still the special matter must be such, as, if pleaded, would be sufficient to bar the action; therefore nothing which would be matter of substance in a plea, must be omitted in a notice. The statute uses the word “ sufficient,” and if the matters are only partly sufficient, to bar the action, they fall short of the requisition of the act. Also, a notice may present as many independent defences as could be set up by way of special pleading; for thé word “ any ” special matter, will comprehend every special matter which could be pleaded. Likewise, the special matters may be arrayed under as many numerical divisions as the defendant sees fit to employ; he may also use any form of words or phraseology that may belong to common parlance, and are intelligible to a person of common understanding. But each defence must stand by itself, as much as in a plea; so that it may plainly appear where one defence ends and another begins. This is important for two very decisive reasons; one is, that the adverse party may have fair notice of the nature of the bar intended to be set up against him, and may be prepared to meet it at the trial; the other is, that the court may see and be able to judge of the sufficiency of the matter in point of law. The idea thrown out in the argument, that a notice is an entire instrument, and if the defendant only confine himself within it, he may, at the time of trial/, garble-it, by drawing some facts from the beginning,, some from the end, others from one part, and others from *129] *another part, so as to make out a bar, is too unlike anything else known in pleading, and really contains the elements of too much confusion, to be seriously adopted. Under such license a party could so wrap up and conceal his defence,. *163 that no human sagacity might be able to develop it, without a key to the design; and the whole might be little different from a Chinese puzzle. The adverse party might never find out the connections of the instrument, if they were altogether arbitrary; and, therefore, he might be obliged to go to trial, with little better knowledge of the intended defence, than if he had received no notice. Whereas, the statute, in requiring a notice, means a fair, candid and intelligible, statement of facts, presenting each defence by itself, as much as in a plea; so that the adverse party may know, and be prepared to meet it; and so that the court and jury may clearly understand the points they are to try. For these reasons I think the first and second notices so objectionable that they ought not to be allowed. But, as the defendant will have leave to amend his notice, in the foregoing, or any other particulars, if he chooses to apply for it, it will not be improper to assume the proposed combinations, in order to see whether the second notice contains sufficient matter for a good and legal set-off; and whether the first and second combine sufficient matter to constitute a fraud at the common law.
Let us examine it first in the character of a set-off. The notice does not assert that the bank agreed to a set-off, but that the defendant offered to make it; and then treats that offer as an actual or equitable payment, because the statute directs the plea of payment, between mutual dealers, to be put in by the defendant when he is sued. But if parties have no action depending, a simple offer by one party to set off, when nothing is paid, released or delivered up, by that party, nor received by the other, cannot amount to payment, in either a legal or equitable point of law; but being unaccepted, the offer leaves the parties precisely as they were; and if either of them holds a commercial note, not yet due, against the other, he may endorse it away precisely as if no such offer had been made; for the offer is no evidence of payment, nor can it be pleaded as such. But the plaintiff *164 took this note, it is said, under full notice that an off set lay against it, and, therefore, it is argued that he ought to hold it subject to that set-off. On the other hand, he took the note before it became due, and he could not know that the matter of set-off, which consisted of bank notes, would be *130] *retained by the defendant till his own note should come to maturity. The defendant lay under no obligations either legal or moral to retain them. Admit that he had two hundred and fifty dollars in the notes of the bank, and had proffered them in payment of the note before it became due, and they were not accepted; he gave no notice that he would keep that money idle two or three months, without using it in the course, of his business. The notice states, indeed, that the bank was in failing circumstances; but that would excite most people to get clear of such notes as fast as possible; and it could not be for¿seen that the defendant would act so differently from all other people, as to retain his money for two or three months under such -circumstances. It consisted of negotiable notes against the bank; and he has as good a right to pass away their notes as they had to pass away his. Least of all could it be supposed that he would retain those bills for a discount against this note,, inasmuch as he had promised to pay it without discount, and had placed the note in open market, with this promise plighted on the face of it finder his hand. If he had a demand ever so just and good against the bank, he had promised never to set it up against this note ; arid the plaintiff, at the time the endorsement was offered to him, had a right to rely on that promise ; he also knew that any attempt to set up a discount, would not only be in derogation of the promise, but contrary to an act of the legislature, and to a plain decision of this court founded thereon. The statute provides, that "no discount shall be allowed when the note expresses that the money therein mentioned shall be paid without defalcation or discount. Rev. Laws, 396, sec. 4. Accordingly, in the case of Coryell v. Croxall, 2 South. *165 764, this court decided that no discount could be set up against the endorsee of a note so drawn ; though he took it after it was overdue, and had become dishonored. In that case the court ordered the plea and notice of set off to be stricken out; and the same must therefore be done here as far as respects the set off. But whether the facts in the second notice combined with those in the first, will, if taken together, make out a case of fraud at the common law, remains yet to be considered.
A combination, then, of the first and second notices, presents the following case. That the bank gave its own bills for the note in question, when it was in failing circumstances and destitute of funds to redeem them, and, in fact, refused to take the same bills back again, in payment of the note ; and that Tillou, the plaintiff, *knew the foregoing [*130 facts when he received the note by endorsement..
Now the defendant has an option to present fraud in either of two ways; he may give it in evidence at the time of the trial, under the general issue, without giving previous notice; or, when facts are intermixed with matter of law, (1 Ld. Ray. 87, Hussy v. Jacob—12 Mod. 97, 376. Tidd's Pr. 201) as in this case, he may plead them specially, or give notice of them under the statute. If he give no notice he must open the particulars, at the time of trial, to the court, that it may see whether they amount to fraud, supposing them to be all true. If they will not, the particulars must be overruled for this plain reason, that though the defendant may give fraud in evidence, he cannot give in evidence what is no fraud. So if he give previous written notice of particulars, it stands in the place of an opening, and the court must adjudicate on its sufficiency. The particulars must be shewn in a notice as fully as in an opening. This position the defendant has, however, controverted, both by reasoning and by a case. He argues that because particulars may be given in evidence without any notice, therefore a notice need not state them. It is plain, however, *166 that he must shew them in some way or other to the court, that it may judge of,their competency; otherwise a party would become his own judge, and, under pretence of proving fraud, might lay before the jury the most irrelevant and illegal evidence. But a case in this court of Mason v. Evans, Coxe's Rep. 182, is relied upon; where to debt on bond the defendant pleaded fraud in obtaining the bond, and set out the particulars; he-also pleaded fraud generally and set out no particulars ; and the court differed as to the legality of the last plea; two of the judges held it to be good; but the third judge condemned it as a novelty, as being unprecedented in law, and anomalous in principle; it being neither the general issue nor yet a special plea, but a kind of general special plea. As the defendant has not put in this kind of plea in the present instance, it becomes unnecessary to speculate on what would have been the consequences had he done so. On the contrary, he has set out the particulars, as was done in the former plea in the above case; and I cite that as a case in point, to shew that when the particulars are set out, the court must adjudicate upon them, and strike them out if they do not amount to fraud. The particulars in that plea were that Mason, declaring *132] himself to be seized in fee of certain lands *in Virginia, sold them to the defendant, when, in fact, he had no title in them, and that the bond was given to him for those lands. The court set aside the plea, and the Chief Justice said it was clearly ill, “because the facts set forth in it, from which the.conclusion of fraud is deduced, are not, if proved, a sufficient ground for such an inference: if Mason had bought the lands fairly, he might honestly sell them, if he was ignorant of the defect in the title, and there is no averment that he knew his title to be defective.” In like manner, the court, in this case, must examine the particulars pleaded, (or given notice of, which is the same in substance) and determine whether a conclusion of fraud can be legally deduced from them.
*167 Take tlieu, the facts in the notice to be true, that the bank was then in failing circumstances, and knew that it had no specie to redeem the bills, at the time it issued them to the defendant, and that they still lie on his hands, unredeemed and perished; still the notice does not aver that the bank had then actually failed: nor does it deny that it was in the full exercise of its usual business, nor but that its notes sustained as good currency as specie, in so much that the defendant gave his own note for them at far. If the bank has failed since that time to pay its notes, the defendant meets with a misfortune common to every man whose debtor becomes insolvent. Many good men have sold property to a purchaser, who afterward failed to pay the note he gave for it, and was really worth nothing at the time he gave it; but I do know a case in which subsequent failure, of itself, has been holden to vitiate and set aside the sale. If the defendant had given for these bills a deed for a lot of land, would the subsequent failure of the bank have rendered its title to that land void ? more especially if the land (or the note, which is the same thing) had in the mean time been conveyed to a third person for valuable consideration ? Even if the bank had really defrauded Britton, by giving him worthless bills, may Britton for that reason, defraud Tillou? Such ethics would not stand the test of law, morality, or religion. So that if the bank had committed a fraud on Britton, he ought not to visit it on the head of Tillou, the plaintiff, unless he was concerned in the original transaction.
This brings under consideration the second branch of the notice, which is, that Tillou knew all the foregoing facts and circumstances before he took the endorsement. Let us then examine the particulars. The notice does not aver the presence of Tillou at the *making of the note, or [*133 when the defendant got it discounted, or when the bank issued its bills to the defendant; nor that he excited the defendant to make the note, or to borrow the bills, or the *168 bank to issue them ; nor that he knew at the time of the loan, that the bank was in failing circumstances, or was issuing bills without the means of redeeming them. It avers that after the defendant and the bank had completed their dealings together, the plaintiff first arrived at the knowledge of this note being held by the bank, and of the circumstances under which they acquired and held it. And the question comes fairly up, whether a knowledge of these circumstances is sufficient to impair the credit and circulation of a note, drawn ixx this form, and to impeach it in the hands of an assignee who had no concern in the original transaction. But this question received a full and final decision, by the unanimous opinion of this court, in the case of Coryell v. Croxall, 2 South. 764, before cited. Oroxall made a note in this form to one Le Grand, and afterward furnished him with goods, so that he had a just and righteous set off against Le Grand ; but after the note was over due, Le Grand 'endorsed it away, and in that dishonored state it came to the hands of Coryell, the plaintiff; yet he recovered of Croxall, the maker, accox’ding to the face of the nofe, and the set off for the goods was wholly disallowed, on the authority of the statute. The defendant’s counsel have suggested a want of similarity between the two cases, in this'important point, that Coryell had no notice of an existing off-set before he took that note by endorsement. But I hold the similarity in that respect to be complete. Coryell, when he took the note, saw that the day for payment'of it had elapsed; be saw that the maker, for some cause, had, in the language of mex-chants, put dishonor on the note. This, according to all the boobs, was notice to Coryell that some difficulty attended the note ; it wras'notice to him to enquire into the circumstances before he took it; otherwise he would have to hold it as if he knew all the equities attending it. The doctrine with respect to commercial notes had long been settled, and the court did not mean to remove or shake a tittle of it; the *169 court proceeded on the ground that his knowledge of those equities could make no difference, for that here was a promise that no discount should be made, even if the maker of the note had a good one against Le Grand. The endorsee had a right do rely on that promise contained in the body of the note, and it was no fraud in him to take it. *Such a charge would fall more heavily on the [*134 maker of the note, who had promised to pay without discount, and yet meditated a fraud on that promise.
I would not have it inferred (from anything stated hypothetically, for argument and illustration) as being my opinion, that a bank acts fraudulently by issuing notes beyond the amount of its capital. It is allowed by its charter to do so to a certain extent, and for the excess to rely, like a merchant, on its credit. Most merchants extend their business, on credit, far beyond the amount of their actual capital; and I do not foresee, nor can any man foresee, the endless consequences of declaring all their notes, on that account, to be fraudulent and void ab initio. But the case does not call for a direct opinion on this point. I place my opinion on another ground, that if a man promise to pay a note without defalcation or discount, and there happen to be any failure of consideration between the maker of the note and the person to whom it is made, or any subsequent equities arise between them, they must adjust those matters in a separate action between themselves, without involving the endorsee in their disputes, even if he knew that disputes existed at the time he received the endorsement. And for this, and other reasons before mentioned, I am of opinion that the particulars make out no fraud at common law, and that the first and second notices ought not to be allowed.
The third notice is, that while the bank was the holder of the defendant’s note, it became indebted to him in a larger sum than the amount of the said note, by reason whereof there was not then nor afterward would 'be, any *170 thing due from the defendant to the bank, and that the bank was then in failing circumstances; of all which the plaintiff-had notice before he' took an endorsement of the note; and that the said transfer was contrived by fraud, covin, collusion and guile, with intent to defraud the defendant of the amount of said note ;■ and that the transfer of the same to the plaintiff was fraudulent and void.
The first part of this notice repeats again the matter of set off, the failing circumstances of the bank, and the plain- . tiff’s knowledge thereof, which have been considered insufficient under the former notice, and need not be repeated again under this head.
The ensuing part imputes to the'plaintiff an intent to shut out the off-set by means of the endorsement, and gives to that intent the appellation of fraud. Rut admitting the intent *135] in its utmost latitude, I am still opposed to the idea of'its being fradulent in point of law. On the contrary, it ■was a lawful intent. The defendant had promised payment without discount, and the statute had bound him to the fulfillment of that promise, so it was not fraudulent, but lawful, for any man to take the note with an intent to enforce the promise in its true sense, and with a determination not to submit to any discount.
The concluding part of the notice is, that the transfer to the plaintiff was fradulent and void. We have seen that it is not rendered so by any of the foregoing facts ; and if any other facts exist beside those, they ought to have been set out, for the information of the adverse party, and also that the court might judge of their effect. The defendant may mean, and from suggestions thrown out in the argument, he possibly does mean, by “ fraud, covin, collusion and guile,” that the plaintiff gave no consideration for the note, and that the bank, while it is the real owner, only uses the plaintiff’s name, by collusion with him, in order to deprive the defendant of his off-set. If the matter were so stated, I am clearly of opinion, that the transfer would be collusive *171 and fraudulent; but these matters cannot be taken by way of presumption, or parol suggestion, in addition to the notice, for the particulars ought ail to be sot out. 1 am, therefore, of opinion, that this third notice, in every point of light in which I can view it, is also insufficient.
The fourth notice is, that the bank while holder of this note, was indebted to the defendant and divers other persons in large sums of money, amounting to one hundred thousand dollars, and being in failing circumstances, transferred this note to the plaintiff, with intent to delay, hinder and defraud its creditors.
Now neither court or jury have any lawful right to presume a sale or transfer fraudulent, merely because the seller stood indebted at the time, and was in failing circumstances. A person thus situated possesses an undeniable right of sale for valuable consideration, or to transfer property to a creditor in satisfaction of a j ust and honest demand. The notice should have stated the transfer as being without consideration, or not in satisfaction of a debt justly due or owing to the plaintiff, or some other matter from which a court and jury could lawfully infer an intent to defraud, delay or hinder creditors. If both the defendant and the plaintiff had just demands against the bank, the said bank had a right to pay either *of them first without an impu- [*136 tation of fraud by the other. The law contains no such principle, as that a man in failing circumstances may not pay any just debt first which will best relieve his circumstances. If, while a man retains his property in his own hands, the right of giving preference should be denied, he would so far lose the dominion over his own, that he could not pay anybody, because, whoever he paid would receive a preference. He could only pay rateably, which is never incumbent till after he has taken the benefit of the insolvent laws, or has assigned his property to trustees for the benefit of creditors, and so put the dominion over it into other hands. Accordingly it wras decided by this court, in the *172 case of Hendricks v. Mount, 2 South. 743, that the making of such preferences was every day done, was every day sustained in our courts of justice, and is legal.
The fifth notice is, that the bank, being indebted to the plaintiff, transferred the note to him for the purpose of giving him an advantage over the other creditors of the bank, whereby he should be first paid, and receive a greater proportion than others, contrary to the statute in such case made and provided.
The statute referred to, Rev. Laws, 674, was made to secure to creditors an equal and just division of the estates of debtors who convey to assignees, in trust for the benefit of creditors. The present case does not fall within the letter or purview of this statute. Here is no conveyance to assignees as agents, or in trust for others than the plaintiff himself. If the statute embraced such a case as this is, no merchant, owing a few small debts, and being in that sense a debtor, could endorse over a common commercial note so as not to be fraudulent and void, without annexing to every such endorsement, an inventory, under oath, of all his property, real and personal, together with a list of all his creditors, that the same might be published in two newspapers. It would be a waste of time to pursue this point any further.
On the whole, we consider the plea of payment to the bank, and those several notices, not sustainable in law, and, therefore, let them be stricken out.
Opinion of Justice Drake.
The important facts stated in the first, second, third and fourth notices, fifed in this cause, are : that the note sued on, ■before it was transferred to the plaintiff, was the property, and in the hands, of the president, directors and company, of *137] the State Bank at *Trenton; that whilst it was their property, the defendant tendered to them payment thereof *173 in their hank notes, which they refused to receive, and that these bank notes were the same which the defendant had received of the bank for the note in question; that the said banking company was indebted to the defendant in a large sum of money, and ho offered to set off so much of his demand as would satisfy this note, which the company also refused; that the said bank was in failing circumstances, and the defendant still holds the said hank notes; of all which premises the plaintiff had notice before the transfer to him of the promissory note in question. These facts are presented in an objectionable form, being spread through various notices, no one of which is considered even by the counsel for the defendants, to be sufficient, in itself, to bar the plaintiff’s action. But overlooking defects of form, the question arises, whether all these matters combined constitute a legal defence. The plaintiff prosecutes, as endorsee, for a valuable consideration, (for such the law presumes him, and there is no allegation to the contrary)non a regular negotiable note, endorsed before due. And whether before or after, does not appear to be material, as it contains the words without defalcation or discount, 2 Southard, 764. Gan the negotiability of such a note be restrained by tho circumstance that the holder is indebted to the drawer, or that the drawer has offered to pay it as stated in the notice, or that he has retained in his hands the original consideration for the note, which he is willing and has offered to restore, and to take it up ? All these facts, with the additional one that the holder was “in failing circumstances ” when the note was negotiated, will not make the transfer of it fraudulent. The note was made for the market, so expressed as to give it protection against cross demands, and there is no pretence of any new agreement that such demands should be accepted in payment. I can perceive no fraud, no violation of good faith, in the transfer of this note. The bank neither accepted their notes as payment, nor induced the defendant to purchase or retain them *174 under a promise that they would so accept them. If it be true that the bank was “in failing circumstances,” and that their notes had consequently fallen in value, (which latter fact is not alleged) this circumstance presents an important reason why this off set should not be made. The funds of the bank should be made as available as possible, for the payment of its debts; and the maker of a note, who had *138] received *the whole amount of it, should not be permitted to pay it off with a depreciated currency.
But there is an allegation of fraud contained in one or more of these notices, “ and that the transfer and delivery of the said note, by the said State Bank to the said plaintiff, was devised of fraud, covin, collusion or guile, to the end, purpose and intent, to defraud the defendant of the amount of said note, and that the transfer of the said note to the said plaintiff, was and is fraudulent and void.” T presume this is meant as a conclusion from the facts stated, and which I have already considered. If not, it is too general to stand alone, and cannot protect the notices from being struck out.
The fifth notice brings up for consideration, the construction of the act entitled “ An act to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors,” and I am of opinion, that if the act is not to be confined to cases of assignment in trust for the benefit of creditors, yet it was never meant to extend to a solitary transfer of an individual item of property to a creditor, in payment of an honest debt. The construction contended for by the counsel for the defendant, would deprive a man in failing circumstances of all power over his property; for if he could not transfer a note, or other article of property, immediately to a creditor, in payment of a debt, he should not be permitted to sell it in order to raise money for that purpose. The operation‘of the statute must be confined, if not to cases where a trust is created, at least to cases where there is something of *175 universality in the assignment, or, in the language of the act, where the debtor’s estate is assigned, which should be done either collectively, or if in parcels, and to particular creditors, the assignment should appear to be part of a system or plan, designed to transfer the debtor’s estate in such manner as to prevent an equal.and just distribution of it among his creditors. But in this notice, no assignment of the debtor’s estate is suggested. It is confined to the transfer of a solitary note. I am of opinion, that upon the most extended construction of the statute, this case is not within its provisions, and that therefore the notice should be struck out.
The Chief Justice, being one of the stockholders of the State Bank at Trenton, gave no opinion.
The second plea, and all the notices, ordered to be stricken out.